# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                                                  Miscellaneous Proceeding 05-101

ACTRADE LIQUIDATION TRUST,

    Plaintiffs,

v.                                                                                       United States District Court
                                                                                         Case No. 05-589

HLC INDUSTRIES


## REPORT AND RECOMMENDATION

    This Report and Recommendation is made pursuant to the District Court's Order of August 5, 2005. As set forth in the August 5 Order, the undersigned will consider both the motion to dismiss and the motion to refer. First, I will consider the District Court's subject matter jurisdiction. Finding that the District Court does not have jurisdiction pursuant to 28 U.S.C. § 1334, and finding that the District Court has jurisdiction pursuant to 28 U.S.C. § 1332, I will next consider whether venue in this District is proper. Having found that the forum selection clause in the contract between the parties is valid, I will recommend that this civil action be transferred to the United States District Court for the Southern District of New York. Fourth, given the proposed disposition of this civil action, the question of whether this civil action should be referred to the undersigned becomes moot. For these reasons, I recommend that this civil action be transferred to the United States District Court for the Southern District of New York.

## I. FACTS

There are three main characters in this dispute. The Plaintiff here is Actrade Liquidation Trust, which is the Plaintiff in this civil action. The Trust was created pursuant to the Chapter 11 bankruptcy proceedings of Actrade Capital, Inc. Actrade Liquidation Trust is the successor to all of the claims of Actrade Capital, Inc. An individual named Peretz Bronstein is the Trustee for the Actrade Liquidation Trust. For purposes of this litigation, it is not necessary to distinguish between the Trust, Trustee Peretz Bronstein or the predecessor corporation. Therefore, the Plaintiff will be referred to as Actrade. Actrade was in the business of providing commercial financing.

Defendant HLC Industries is a Pennsylvania corporation with its principal place of business in Bala Cynwyd, Pennsylvania. HLC Industries is in the business of providing dyed cloth to clothing manufacturers.

Terry Manufacturing, Inc., and Terry Uniform, Inc., are Alabama corporations which were in the business of manufacturing uniforms. Most notably, Terry Manufacturing was a supplier of uniforms for McDonalds, the national fast food chain as well as for the United States government. Terry Manufacturing purchased dyed cloth from Defendant HLC. Both Terry Manufacturing and Terry Uniform are debtors in bankruptcy cases pending in this Court. For purposes of disposing of the pending matters, it is not necessary to distinguish between Terry Manufacturing and Terry Uniform.

There were a series of three-sided transactions which may be summarized as follows. First, Terry would purchase cloth from HLC, which would invoice Terry for the purchased cloth.

-2-

Second, HLC would then present the Terry invoice to Actrade for immediate credit. Third, in the event Terry ultimately paid the invoice, the amount owed to Actrade would then be satisfied.

This seemingly simple relationship is complicated by the following four items. First, Terry Manufacturing and Terry Uniform filed bankruptcy petitions in this Court, owing either Actrade or HLC for unpaid invoices for materials. Second, Actrade Capital, Inc., has also gone into bankruptcy, resulting in the assignment of Actrade Capital's rights to the Trust. Third, Actrade has entered into contracts with both Terry Manufacturing and HLC, which give rise to Actrade's Trade Acceptance Draft program or TAD's for short. Thus, the financing arrangement was not simply the assignment of invoices but rather the creation of another instrument–the TAD. Fourth, and most importantly, Actrade alleges that HLC has misrepresented the age of some of the Terry Manufacturing invoices, causing Actrade to advance funds where it otherwise would not have done so.

Before dealing with the merits of the pending motions, it may be helpful to explain why the date of a Terry invoice is so important and why HLC may have had an incentive to do that which Actrade has accused it of doing. Borrowing against accounts receivable is a common commercial practice and this Court has had opportunities to examine such practices on a regular basis. While the precise form of the transactions may vary widely, there are a few principles which are common to these kinds of commercial transactions. The first principal is that invoices, or the related account receivable have value and may be used as collateral for a loan or sold outright. The second principle is that lenders charge fees which are frequently substantial. The third principal is that the age of an invoice is critical in determining its value. A newly issued invoice is worth considerably more than one which is 90 days old.

-3-

Keeping these principles in mind, HLC would have had an incentive to first attempt to collect the invoice on its own, without the intervention of Actrade. Had Terry promptly paid the invoice, HLC would have realized 100% of the value of the account receivable, cutting Actrade out of the picture. After the account receivable had aged, say for example it was 90 days old, a lender would pay much less for a 90-day old invoice than for one which had just been issued. Indeed, many lenders will not accept invoices as collateral unless it has only recently been issued. Thus, there is incentive for a company in the shoes of HLC to first attempt to collect an invoice on its own and if it is not successful, to backdate it and then either borrow against it or sell it outright as if it were a current invoice rather than one which had aged. This is the commercial law equivalent of taking a used car with 200,000 miles and turning back the odometer to 25,000 and selling it with an altered odometer.

Plaintiff Actrade filed its complaint in this Court on June 21, 2005. At the same time, Actrade requested that this civil action be referred to the Bankruptcy Court. Actrade contends that this civil action is related to the Terry Manufacturing bankruptcy case and for this reason would best be considered in connection with the bankruptcy proceedings. On July 7, 2005, Defendant HLC moved to dismiss the complaint on several grounds. (Dist. Ct. 05-589, Docs. 15, 16). Actrade filed memoranda on July 15, 2005, August 3, 2005, and August 11, 2005. (Dist. Ct. 05-589, Docs. 19, 31 and 36).

## II.  CONCLUSIONS OF LAW

### A.  SECTION 1334 JURISDICTION

The first question is whether the District Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1334. Section 1334(b) provides that "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Proceedings arising under title 11 are those which invoke a substantive right created by the Bankruptcy Code. Proceedings which arise in cases under title 11 are typically administrative type matters within the confines of a bankruptcy case. This civil action is not one of either of these kinds of proceedings. See, Continental National Bank v. Sanchez (In re: Toledo), 170 F.3d 1340, 1344-45 (11th Cir. 1999).

The question here is whether this civil action is "related to" a case under title 11. If so, then the District Court has jurisdiction pursuant to 11 U.S.C. § 1334, if not, then it does not.

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estates." (citation omitted) We join the majority of the circuits that have adopted the Pacor formulation.

Miller v. Kemira, Inc., (In re: Lemco Gypsum, Inc., 910 F.2d 784, 788 (11th Cir. 1990)(citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984)); see also, Carter v. Rogers, 220 F.3d 1249 (11th Cir. 2000)(breach of fiduciary duty claims against a trustee in bankruptcy for official actions is within the bankruptcy court's § 1334 jurisdiction); In re: Munford, 97 F.3d 449 (11th

-5-

Cir. 1996)(bankruptcy court had § 1334 jurisdiction to bar indemnification and contribution claims by nonsettling nondebtor defendants as it affected the amount available to be paid to the estate); Community Bank of Homestead v. Boone, (In re: Boone), 52 F.3d 954 (11th Cir. 1995)(no subject matter jurisdiction over lender liability suit brought by debtor as the outcome of the case would not affect the estate); Harris v. Citigroup, 298 B.R. 984 (Bankr. M.D. Ala. 2003)(no subject matter jurisdiction over independent action to bar lender liability action as the outcome of the suit would not affect the bankrupt estate).

To apply this principle to the case at bar, we must examine the civil action and determine whether its outcome will affect the proceedings in the Terry Manufacturing bankruptcy case. In round numbers, the bankrupt estate of Terry Manufacturing owes somebody $1,000,000 on invoices for materials provided by HLC. Whether the estate owes HLC or Actrade is of no great consequence to the estate. As it is unlikely that the estate will be able to distribute 100 cents on the dollar on unsecured claims, it makes a great deal of difference to both HLC and Actrade who prevails in this civil action. As the outcome of this civil action will not have any effect upon the Terry Manufacturing bankruptcy proceeding, the District Court does not have jurisdiction pursuant to 28 U.S.C. § 1334.

Actrade argues, in its July 15 submission, that the outcome of this civil action could enlarge the estate, thereby demonstrating an effect on the bankruptcy proceeding sufficient to give rise to "related to" jurisdiction. Yet, it fails to explain how this is so. If Actrade prevails in this civil action, it will have shown either that HLC breached its contract, or that it defrauded Actrade (or perhaps both). Regardless of which scenario comes to pass, the effect on the Terry Manufacturing bankruptcy will be zero. Actrade's conclusion, that the estate will be enlarged,

-6-

does not follow from any premise which might be advanced in support of its cause of action against HLC.

## B. SECTION 1332 JURISDICTION

Diversity of citizenship jurisdiction exists where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between–(1) citizens of different states." 28 U.S.C. § 1332(a). From the face of the complaint, it appears that the Plaintiff is a citizen of New York and that the Defendant is a citizen of Pennsylvania. It further appears that the amount in controversy exceeds $75,000. Therefore, it appears that diversity of citizenship jurisdiction exists.

## C. VENUE

Having determined that Section 1334 jurisdiction (bankruptcy proceedings) does not exist and that Section 1332 jurisdiction (diversity of citizenship) does exist, the Court will next determine whether venue lies in the Middle District of Alabama. First, as the undersigned has determined that Section 1334 jurisdiction does not exist here, it necessarily follows that the venue provisions of 28 U.S.C. § 1409 do not apply. The appropriate venue provision is found at 28 U.S.C. § 1391(a), which provides as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the

action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise may be brought.

As Defendant HLC Industries is a Pennsylvania corporation with its principal office in Bala Cynwyd, Pennsylvania, it would appear that venue properly lies in the Eastern District of Pennsylvania.

Paragraph 19 of the contract between Actrade and HLC provides as follows:

> **Applicable Law, Venue, and Service of Process.** You agree that the laws of the State of New York shall govern this Agreement, an any between us. Further you confirm your understanding that the TAD Program and the use of TADs is specifically subject to the provisions of the Uniform Commercial Code, of the State of New York, and in particular that the Laws of the State of New York will govern the legal effect and enforceability of electronic signature affixed to any document pertaining to a TAD transaction. Should Actrade not elect to submit any dispute hereunder to arbitration, you agree that any legal action or proceeding arising out of or relating to this Agreement or the relationship between us shall be instituted solely in the courts of the State of New York, within the City and County of New York, or of the United States of America for the Southern District of New York at New York City, New York and the parties hereby submit to the jurisdiction of each such court in any such action or proceeding. You consent to the service of process in any such legal action or proceeding by means of either service upon the Secretary of State of New York hereby designated as an Agent for service of process or by certified mail, return receipt requested, addressed to you at the address first above written, or such other address as you may from time to time designate in writing. You also waive your right to a trial by jury or any disputes arising from your relationship with Actrade.

(Dist Ct. No. 05-589, Doc. 22).

Defendant HLC requests that this civil action be dismissed, citing the above quoted forum selection clause and, in the alternative, on the grounds of forum non conveniens. (Dist. Ct. No. 05-589, Doc. 16, p. 8). It should first be noted that it is well settled that the existence of a forum selection clause "does not divest a court of jurisdiction or proper venue over a contractual dispute. Rather, a court addressing the enforceability of a forum selection clause is to consider whether it must, in its discretion, decline jurisdiction and defer to the selected forum." Lambert v. Kysar, 983 F.2d 1110, 1119 (1st Cir. 1993) (citing M/S Bremen v. Zapata, Off-Shore Co., 407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed 2d 513 (1972)).

"The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration." Stewart Organization, Inc., v. Richo Corporation, 487 U.S. 22, 31, 108 S.Ct. 2239, 2245 (1988). See Intercall Telecomms., Inc. v. Instant Impact, Inc., 376 F. Supp. 2d 155, 157 (D. P.R. 2005) (generally motions to transfer are to be adjudicated on an "individualized, case-by-case consideration of convenience and fairness")(quoting Stewart v. Ricoh Corp., 487 U.S. at 29). A forum selection clause should however be a "significant factor that figures centrally in the district court's calculus." *Stewart Org. v. Ricoh Corp.*, 487 U.S. at 29. The District Court is given discretion to consider on a case-by-case basis, where venue should be lodged. The following would appear to favor transfer of this civil action to the Southern District of New York. First, the parties have bargained for that venue. Second, the parties are located in the Southern District of New York and the Eastern District of Pennsylvania, therefore it would be convenient to the parties. Third, the harm alleged to have taken place would have taken place in New York.

While the complaint is not specific as to where the unlawful acts in question may have

-9-

Case 05-00101    Doc 6    Filed 10/20/05    Entered 11/18/05 11:30:22    Desc Main
Document    Page 9 of 12

been committed, it appears that almost all of the relevant conduct would have occurred in either New York or Pennsylvania. To be sure, the parties may find it necessary to take the depositions of Terry Manufacturing employees, this fact in and of itself does not favor keeping this civil action here. The parties are located elsewhere and the majority of the acts which gave rise to this cause of action took place elsewhere, therefore, there is no good reason to retain this civil action in the Middle District of Alabama.

Strictly speaking, HLC requests dismissal and not transfer of this civil action. While the District Court would be within its discretion to dismiss, the more efficient and more expedient means of disposing of this matter would be to transfer it to the Southern District of New York. Cf. Rule 12(b)(3), 28 U.S.C. § 1404. See also Stewart v. Dean-Michaels Corp., 716 F.Supp. 1400 (N.D.Ala. 1989)(transferring two cases to New York and Michigan respectively in accordance with forum selection clauses); Borst v. Hi-Line Electric Company, 698 F.Supp. 223 (S.D. Ala. 1988)(the court here concluded that forcing the plaintiff to litigate in Texas in accordance with the forum selection clause would effectively deprive him of his day in court); Ortho-Med, Inc., v. Micro-Aire Surgical Instruments, Inc., 1993 WL 560528 (M.D. Fla.)(the court enforced a forum selection clause after weighing various factors and concluding that plaintiff failed to show clause was unforceable or that factors of convenience and fairness made contractually selected forum sufficiently inconvenient forum to justify retention of action); Berman v. Cunard Line, Ltd., 771 F.Supp. 1175 (S.D. Fla. 1991)(the court found that in light of the unequal bargaining power between the two parties, transfer to the contractually selected forum would be unfair).

## D. THE COMPLAINT STATES A CLAIM

Defendant HLC seeks dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P., alleging that the complaint fails to state a claim for which relief may be granted. For purposes of deciding the present motion to dismiss, a "complaint must be taken as true and read in the light most favorable to the plaintiff." Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 912 (11th Cir. 1993) (quoting Linder v. Portocarrero, 963 F.2d 332, 334 (11th Cir. 1992)). Stated another way, "[m]otions to dismiss for failure to state a claim should be denied unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of its claims." Jackam v. Hospital Corp. of America Mideast, Ltd., 800 F.2d 1577, 1580 (11th Cir. 1986) (emphasis added) (quoting Bracewell v. Nicholson Air Services, Inc., 680 F.2d 103 (11th Cir. 1982)). Furthermore, when reviewing such a motion, all allegations are to be construed as true and read in the light most favorable to the plaintiff. Id; see also Solis-Ramirez v. U.S. Dep't. of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985). Any doubts or ambiguities with respect to the sufficiency of the claim must be resolved in favor of the plaintiff. Deerman v. Federal Home Loan Mortg. Corp., 955 F. Supp. 1393, 1397 (N.D. Ala. 1997).

HLC contends that there was no contract because the copy of the contract in this Court's record does not contain a cursive or handwritten signature of a representative of Actrade. Actrade has alleged the existence of a contract, breach and damages. When considering a motion to dismiss, the Court assumes that all of the well plead allegations in the complaint are true.

-11-

Whether the typewritten "signature" of Ernest Witherspoon is sufficient is a question for another day. The motion to dismiss, for failure to state a claim, should be denied.

### III. CONCLUSION

For the reasons set forth above, I recommend that the District Court determine that it does not have subject matter jurisdiction to hear this civil action, pursuant to 28 U.S.C. § 1334, as it does not "relate to" the Terry Manufacturing bankruptcy case, within the meaning of established Eleventh Circuit precedent. As diversity of citizenship exists, this civil action is properly within the Federal Court system pursuant to 28 U.S.C. § 1332. While the District Court has subject matter jurisdiction under diversity of citizenship, it is not proper to resort to the venue provisions which are applicable to bankruptcy proceedings. Considering the forum selection clause in the contract and the doctrine of forum non conveniens, it would appear that this civil action should be transferred to the United States District Court for the Southern District of New York. The 12(b)(6) motion to dismiss is without merit and should be denied. As a final matter, given the proposed disposition of this matter, reference of this matter to the undersigned is moot.

Done this 20th day of October, 2005.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Nicole Sophia Tygier,
  Robert Alan Kutcher, Attorneys for Actrade
  Michael T. Temin,
  Robert L. Shields, III, Attorneys for HLC Industries